## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**KASEY HOFFMAN, individually,**
**and on behalf of all others**
**similarly situated,**

      **Plaintiff,**

**v.**                                                                    **CASE NO:**
                                                                          **DIVISION:**
**CARDINAL GROUP MANAGEMENT &**
**ADVISORY, LLC d/b/a CARDINAL**
**GROUP MANAGEMENT,**

      **Defendant.**

_____/

---

## CLASS ACTION COMPLAINT AND JURY DEMAND

---

Plaintiff Kasey Hoffman ("Plaintiff"), on behalf of herself and all others similarly situated, file this Class Action Complaint against CARDINAL GROUP MANAGEMENT & ADVISORY, LLC d/b/a CARDINAL GROUP MANAGEMENT ("Cardinal Group") and states:

### I.    **INTRODUCTION**

1.    This is an action brought by Plaintiff Kasey Hoffman and a class of similarly situated former tenants due to the unlawful and unfair Holdover Fees of $100 per hour assessed by Cardinal Group against thousands of tenants every year. The $100 per hour Holdover Fee is levied in breach of the standard form lease agreement,

in violation of the Florida Residential Landlord Tenant Act ("FRLTA"), and the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.552.

2.　　Most leases specify that the lease starts and ends on a specific day. Rent is then charged for each "day" the tenant occupies the apartment. However, Defendant Cardinal Group, one of the largest student housing and multi-family landlords in the Country, devised a scheme to charge its tenants excessive fees by cutting off the last day of the lease term at noon, despite already charging them for the entire day. Knowing that moving out is a difficult and time-consuming process, Defendant deliberately cuts off the last day prematurely—even after being paid in full for the final day—so that it can charge an unlawful and excessive fee of <u>$100 per hour for every hour or partial hour past the noon deadline</u>. Critically, the $100 per hour Holdover Fee is not included in Cardinal Group's standard form lease agreement, is not tied in any way to harm suffered by Defendant by a tenant staying after noon, and is an unenforceable penalty clause.

3.　　Florida law places strict restrictions on amounts that a landlord can charge a holdover tenant. Specifically, Florida Statutes § 83.58 states that the "landlord may also recover <u>double the amount of rent due on the dwelling unit</u>." $100 per hour is $2,400 per day, $72,000 per month, and represents 94 times the amount of Plaintiff's monthly rent.

4.　　Cardinal Group devised this "noon deadline" provision in its lease, but omits the Holdover Fee, in order to deceive and surprise tenants later with the $100 per hour Holder Fee that is deceptively labeled as a Late Key Return Fee.

2

5.      For example, Plaintiff Kasey Hoffman lived in a Cardinal Group student housing apartment complex near the University of South Florida. Plaintiff signed a lease with Defendant which stated that her lease ended on July 31, 2024. **Exhibit 1, Lease**, p.1.  Defendant charged and Plaintiff paid for the entire last day of July 31, 2024.  In other words, the last monthly payment amount did not reflect a pro rata reduction to reflect the noon termination time on the last day of her lease. Nevertheless, the Lease stated that the lease ended at 12:00 pm on the last day of the lease.  As a result, Defendant charged and Plaintiff paid for the entire last day of the lease, not just the first 12 hours of that day.

6.      The Cardinal Group Lease does not say anything about a $100 per hour Holdover Fee.

7.      Rather than include it in the lease,  Defendant's routine practice is to place a flyer containing move out instructions on tenant apartment doors just prior to their move out date, which discusses the Holdover Fee for the first time.  The flyer stated:

**YOUR LEASE TERM ENDS ON** July 31, 2024 @ 12 P.M. , noon

We know moving can be stressful, so we've created this guide to make it easier for you!

Please take some time to review it. If you need further assistance or have questions, please don't hesitate to ask a member of our staff.

Remember, you are financially responsible for your lease until July 31, 2024 . You are also financially responsible for all damages to the apartment until your lease end date.

You must be completely moved out of your apartment and keys turned in by 12:00 PM on July 31, 2024 . An hourly $100.00 fee will be applied to your account if you have not moved out at that time.

3

8.    On the last day of Plaintiff's lease, July 31, 2024, Plaintiff gathered her belongings, moved out of the apartment, and cleaned the apartment as instructed. She was completely moved out and turned in the keys to the front office at 4:30 p.m.

9.    Weeks later, Plaintiff received a letter stating that her entire $380 security deposit had been taken to cover a $500 Holdover Fee labeled as a "Late Key Return" and demanding that she pay an additional $120 to cover the balance of the Holdover Fee.

10.    Cardinal Group had and has no authority to change the terms of its lease agreements via a flyer, nor has it provided any consideration to do so. Further, Cardinal Group had and has no authority to levy an unconscionable penalty in order to generate massive aggregate profits by prematurely terminating the lease at noon on the last day.

11.    If a tenant refuses to pay the Holdover Fees, Cardinal Group simply deducts the excessive and illegal charge from the tenant's security deposit, demands the balance be paid, and then refers the tenant to its debt collector if the tenant does not pay.

12.    Plaintiff and the putative Class have been harmed by Cardinal Group's breaches of the leases, violations of the FRLTA, and its attempts to collect unconscionable and illegal Holdover Fees.

## II.    <u>JURISDICTION</u>

13.    This Court has jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there are at least 100 Class members in the

proposed Class, and, upon information and belief, the combined claims of proposed Class members exceed $5,000,000, exclusive of interest and costs, and at least one Class member is a citizen of a state other than Defendant's state of citizenship. Cardinal Group has its principal place of business in Denver, Colorado. This Court also has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367.

14. This Court has personal jurisdiction over Defendant because its principal place of business is in Denver, Colorado.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant's principal place of business is in this District and Defendant is subject to personal jurisdiction in this District.

## **PARTIES**

16. Plaintiff Kasey Hoffman is a Florida citizen currently domiciled in Pinellas County, Florida, and is a "consumer" as that term is defined by Fla. Stat. § 559.55(8).

17. Plaintiff, at all material times herein, was a "tenant" pursuant to Fla. Stat. § 83.43(4). "Tenant" means any person entitled to occupy a dwelling unit under a rental agreement, pursuant to the FRLTA.

18. Defendant Cardinal Group Management & Advisory, LLC d/b/a Cardinal Group Management is a limited liability company organized and existing under and by virtue of the laws of the State of Delaware with a principal place of

business in Denver, Colorado.  Cardinal Group does business in this District and other districts throughout the United States.

20. Cardinal Group is regularly engaged in the business of collecting rent and providing services to tenants throughout the United States and in the State of Florida. Cardinal Group's employees, affiliates, directors, agents, and attorneys act under the direction and supervision of Cardinal Group and, therefore, Cardinal Group is responsible and/or vicariously liable for the actions of its employees, affiliates, directors, agents, and attorneys under, *inter alia*, the theory of respondeat superior.

## III.  **COMMON FACTUAL ALLEGATIONS**

20. Cardinal Group Companies consists of several related entities that operate a full-service real estate company that acquires, builds, manages, and sells both single-family and multi-family housing throughout the United States.  Cardinal Group Companies is made up of Cardinal Group Management (the Defendant in this case), Cardinal Group Investments, Cardinal Group Consulting, and Cardinal Group Real Estate Services. (Cardinal Group Management, the Defendant in this case, is responsible for leasing operations and billing of the Holder Fees at issue and is referred to herein as "Cardinal Group").  In addition, Cardinal Group Companies has hundreds of affiliated holding companies that it uses to own apartment buildings and to employ its 2,300 person staff.

21.    With over 50,000 units under management, Cardinal Group Companies is one of the top 50 largest multi-family property managers in the Country.

22.    Cardinal Group specifically targets student housing and ranks among the top 25 college housing property managers.

23.    Cardinal Group uses standard form lease agreements from the National Apartment Association that do not vary between tenants and do not substantively vary by state.  Ex. 1, Lease.  When specific states require specific disclosures or terms, Cardinal Group simply includes a state-specific addendum to its standard form lease.

24.    Defendant's standard form lease states that the lease ends at noon on the final day of the lease, not at 11:59 pm or close of business (which are more typical). *Id.*, p. 1.  However, the last month of rent is not prorated to reflect the noon timeframe.

25.    Upon information and belief, all of Defendant's lease agreements nationwide specify that the lease expires at noon on the final day of the lease term, but fail to prorate the amount paid for the last day.

26.    Defendant's standard lease states that "there is a key replacement cost of $75 per key fob or primary key and $25 per bedroom or mail key." *Id.* Nowhere in the Lease does Defendant list an hourly charge for failure to timely return a key, as opposed to not returning the key at all.

27.    Upon information and belief, all of Defendant's lease agreements nationwide omit that Defendant charges a $100 per hour Holdover Fee.

28.    The Lease specifically references "hold over," which is when a tenant "stays beyond the date contained in your move-out notice or notice to vacate." *Id.*

According to the Lease, holdover tenants may be charged "double the amount of rent due for each day" and "holdover rent is due in advance on a daily basis." *Id.*

29.     Upon information and belief, all of Defendant's lease agreements nationwide omit that Defendant charges a $100 per hour Holdover Fee for staying past noon on the last day.

30.     Upon information and belief, Cardinal Group has a national pattern and practice of assessing $100 per hour Holdover Fees starting at noon, despite charging for the entire final day.

31.     Plaintiff's Lease states that her monthly rent is $758 or $25.26 per day in a 30-day month.   According to the Lease, if Plaintiff was to holdover for an entire month, the maximum that Defendant could charge is $1,516, for a single day the maximum would be $50.53, and for a single hour the maximum would be $2.10. Rather than charge the prorated amount specified in its lease, Defendant charges $100 per hour.

32.     Cardinal Group does not provide invoices or any additional information to justify its per hour charge to holdover tenants.   Instead, Defendant simply deducts the charge from the tenant's security deposit and sends them an accounting statement demanding the remaining amount.

33.     If a tenant refuses to pay the rest of the $100 per hour charge, then Defendant sends the tenant to collections, where they are subjected to harassment, calls, emails, negative credit reporting, and difficulty finding future housing.

## PLAINTIFF HOFFMAN'S ALLEGATIONS

34.     Plaintiff Hoffman is, and at all relevant times hereto, has been a citizen and resident of Florida.

35.     Plaintiff is a college-aged person who was working and living near the University of South Florida during the relevant tenancy.

36.     In the summer of 2023, Plaintiff searched for apartments on Google and saw an apartment complex called the Vue on apartments.com, pictured below[1]:



---

[1] *See*, https://www.apartments.com/pmc/cardinal-group-management-and-advisory-llc/888l7x3/ (last visited June 13, 2025)

37.     When Plaintiff visited the Vue Tampa website, it also listed at the bottom that the property was "professionally managed by Cardinal Group Companies."[2] Dating back to December 1, 2022, the Vue Tampa Website also listed that it was "professionally managed by Cardinal Group Companies."[3]

38.     On or about July 10, 2023, Plaintiff Hoffman entered a lease agreement that listed East Fletcher Ave, LLC and Plaintiff as the "parties" for an apartment located at 5651 E Fletcher Ave Tampa, Florida (the "Property").  Ex. 1, Lease, p. 1.

39.     Upon information and belief, East Fletcher Ave, LLC is a holding company that owns the apartment building where the Property is located.  East Fletcher Ave, LLC retains no role in leasing, showing the apartments, executing the lease, nor administering the lease.  All responsibilities of leasing are delegated to Cardinal Group, including executing leases, collecting rents, imposing Holdover Fees and debt collection.  Cardinal Group possesses the authority to enforce the Lease and to collect fees including the Holdover Fee.

40.     Cardinal Group is the Landlord of the Property within the meaning of the FRLTA, which defines the Landlord as "the owner or lessor of a dwelling unit." Fla. Stat. § 83.43(9).

41.     The Lease was signed by the owner's representative, who, upon information and belief, is an employee of Cardinal Group, Taylor Lucas.  *Id.* at p. 9.

---

[2] *See*, https://www.vuetampa.com/ (last visited June 13, 2025).
[3] https://web.archive.org/web/20221201023024/https://www.vuetampa.com/ (last visited September 4, 2025).

42.     Upon information and belief, Cardinal Group is responsible for listing its 50,000 units nation-wide, showing the units, executing leases, collecting rent, administering tenants throughout the duration of the lease, administering move-out, repairing and re-leasing the units.  For all intents and purposes, Cardinal Group is the lessor and landlord of the 50,000 units and over 100,000 beds it manages nationally, not the affiliated holding company that simply holds title to the buildings.

43.     The Lease makes no mention of a $100 per hour Holdover Fee.

44.     To the contrary, the Lease explicitly states that not returning the key at all would subject Plaintiff to a $75 charge.  *Id.*, p. 1.

45.     The Lease explicitly states that, pursuant to Fla. Stat. § 83.58, Plaintiff would only be charged holdover rent on a daily basis and that it would be a maximum of double the $785 of monthly rent.  In pertinent part, the Lease states:

> **3.3. Holdover**. You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a holdover occurs, then: (A) holdover rent is due in advance on a daily basis and may become delinquent without notice or demand; (B) we may file a holdover eviction lawsuit pursuant to Fla. Stat. §83.58 to recover possession of the apartment, double the amount of rent due for each day that you continue to holdover and refuse to surrender possession during the holdover period, breach of contract damages, attorney fees and court costs as may be applicable; or (C) at our option, we may extend the Lease Contract term—for up to one (1) month from the date of notice of Lease Contract extension—by delivering written notice to you or your apartment while you continue to hold over.

*Id.*

46.    At no point did Defendant extend Plaintiff's lease for an additional month.   It is Defendant's practice nationwide to not extend the lease term when it implements the $100 per hour charge.

47.    On the last day of her Lease (which she paid for in full), Plaintiff gathered her belongings and moved out of the apartment.   At 4:30 p.m. on July 31, 2024, Plaintiff went to Defendant's leasing office, located in the building, and turned her key in.   At no point did Defendant's employee state that that key was being returned late or that Plaintiff was a holdover tenant.

48.    Unknown to Plaintiff at that time, Defendant placed a flyer on her door prior to move out but well after the operative lease was signed.   Defendant provided no consideration for this purported change in the terms of the Lease, nor did Plaintiff execute any document agreeing to such change.   The flyer stated:

**YOUR LEASE TERM ENDS ON** July 31, 2024 @ 12 P.M. , noon

**We know moving can be stressful, so we've created this guide to make it easier for you!**

**Please take some time to review it. If you need further assistance or have questions, please don't hesitate to ask a member of our staff.**

Remember, you are financially responsible for your lease until July 31, 2024 . You are also financially responsible for all damages to the apartment until your lease end date.

You must be completely moved out of your apartment and keys turned in by 12:00 PM on July 31, 2024 . An hourly $100.00 fee will be applied to your account if you have not moved out at that time.

49.    On August 10, 2024, Defendant prepared a final account statement in which it charged Plaintiff a $500 Holdover Fee deceptively labeled as a "Late Key Return." **Exhibit 2, Final Account Statement**.

12

50.    Prior to moving, and pursuant to the Lease, Plaintiff paid a $380 security deposit. *Id.*

51.    Defendant withheld Plaintiff's entire $380 security deposit to pay for the $500 "Late Key Return" fee. *Id.*

52.    On August 10, 2025, Defendant emailed and mailed the Final Account Statement to Plaintiff demanding that Plaintiff pay an additional $420 in addition to the $380 that was withheld in violation of the form Lease and the FRLTA from Plaintiff's deposit. The $420 included $120 additional amount due from the Holdover Fee and additional cleaning charges that are not relevant to the claims at issue.

53.    Thereafter, Defendant made repeated attempts to collect the $420 balance including making phone calls and sending emails. On or about October 14, 2024, Plaintiff called to dispute the Holdover Fee and Defendant sent an email again reiterating that the flyer was placed on Plaintiff's door and that she owed the amounts listed in her final account statement. **Exhibit 3**, October 14, 2024 Email. Ultimately, Defendant reported Plaintiff's $420 balance to its debt collector.

54.    Upon information and belief, it is Defendant's routine, repeated and systematic nationwide practice and policy to charge tenants a $100 per hour Holdover Fee beginning at noon on the last day of the lease, as it did to Plaintiff.

55.    As a direct and proximate result of Defendant's actions, Plaintiff experienced and continues to experience nervousness, frustration, and distress as she was fearful that she would be unable to secure future housing if her credit is ruined and if she doesn't pay Defendant what it claimed she owes. She sought counsel and filed

this action in order to protect her credit from further harm and in an effort to stop Defendant's unfair and unlawful practice for herself and others.

56.     As a direct and proximate cause of Defendant's actions, Plaintiff was deprived of her security deposit funds that would have otherwise been remitted to her and suffered actual damages.

## IV.    CLASS ACTION ALLEGATIONS

57.     Plaintiff brings this action as a class action pursuant to Rule 23 (b)(2) and (b)(3), of the Federal Rules of Civil Procedure on behalf of herself and all others similarly situated as members of the Class listed below:

> **Breach of Contract Class**:
>
> All persons in the United States who (1) entered a Lease substantially similar to Exhibit 1; and (2) paid a per hour Holdover Fee from their Security Deposit funds and/or though separate payment.

The Class Period for the "Breach of Contract Class" is equal to the limitations period for a breach of contact claim within the state of tenancy listed on each class member's lease.

58.     Plaintiff brings this action as a class action pursuant to Rule 23 (b)(2) and (b)(3), of the Federal Rules of Civil Procedure on behalf of herself and all others similarly situated as members of the Class listed below:

> **The Florida Sub-class**:
>
> All members of the Breach of Contract Class who leased units within the State of Florida.

14

The Class Period for the Holdover Subclass starts four years prior to the initial filing of the original Complaint in this matter.

59.    Plaintiff brings this action as a class action pursuant to Rule 23 (b)(2) and (b)(3), of the Federal Rules of Civil Procedure on behalf of herself and all others similarly situated as members of the Class listed below:

> **Collections Sub-class**: All members of the Florida Sub-class who   received a collections communication in substantially the same form as Exhibit 2.

The Class Period for the Collections Subclass starts two years prior to the initial filing of the initial Complaint in this matter.

60.    Plaintiff reserves the right to modify or amend the definition of the proposed Classes before or after the Court determines whether such certification is appropriate as discovery progresses.

61.    Plaintiff is unable to state the exact number of members of the Breach of Contract Class, the Florida Sub-class, and the Collections Sub-class because that information is solely in the possession of Cardinal Group.  However, the exact number of class members, including the names and addresses of all class members, will be easily ascertained through a review of Defendant's business records.  The putative Breach of Contract Class includes thousands of former tenants, when considering the 50,000 units Defendant manages nation-wide.   The Florida Sub-class and the Collections Sub-class include hundreds of Florida tenants due to the number of properties Defendant manages within the state.   Therefore, the putative Breach of

Contract Class, Florida Sub-class, and Collections Sub-class are each so numerous that joinder of all members would be impracticable.

62.    Upon information and belief, Cardinal Group utilizes the same standard form Lease and Final Account Statement with its collection efforts for Holdover Fees and collections.

63.    Questions of law and fact common to the Plaintiff and Class exist and predominate over questions affecting only individual members.    Specifically, the predominating common questions include:

a.    Whether Defendant's Leases routinely charged tenants for a full day of rent on the last day despite purporting to terminate the Lease at noon.

b.    Whether Defendant breached the Lease by charging a per hour fee for return of the key after noon on the last day of the Lease;

c.    Whether Defendant charging a $100 per hour Holdover Fee is an unenforceable penalty provision;

d.    Whether Defendant breached the Lease by charging a per hour Holdover Fee that is not included in its Lease;

e.    Whether Defendant breached the Lease by charging a per hour Holdover Fee that contradicts its Lease;

f.    Whether Defendant breached the Lease by attempting to change the terms of its Lease with a flyer purporting to incorporate by reference

16

a per hour fee Holdover Fee despite providing no consideration for the change in the Lease terms;

g.  Whether Defendant violated the FRLTA by charging a $100 per hour Holdover Fee that exceeds double the monthly rent limit cap;

h.  Whether the $100 per hour Holdover Fee constitutes an unconscionable lease provision;

i.  Whether Defendant's attempt to seek a setoff for its $100 per hour Holdover Fee against tenant security deposits violates the FCCPA, § 559.72(9);

j.  Whether Defendant's attempt to seek amounts in excess of the security deposit for Holdover Fees violates the FCCPA, § 559.72(9); and

k.  Whether the members of the Class have sustained damages, and if so, the proper measure of damages, including actual and statutory.

64.  The claims asserted by the named Plaintiff in this action are typical of the claims of the members of the Breach of Contract Class, Florida Sub-class, and Collections Sub-class because, upon information and belief, Defendant used standardized form documents and policies when asserting its Holdover Fees and when attempting to collect debts from Florida tenants after move out.

65.  The claims of Plaintiff and of the Breach of Contract Class, Hold Over Sub-class, and Collections Sub-class originate from the same conduct, practice, and

procedure on the part of Defendant. Plaintiff possesses the same interests and has suffered the same injuries as each putative Class member.

66. The named Plaintiff will fairly and adequately represent and protect the interest of the members of the Plaintiff Class because she has no interest antagonistic to the Breach of Contract Class, Florida Sub-class, and Collections Sub-class she seeks to represent, and because the adjudication of her claims will necessarily decide the identical issues for other Class members. Whether the Defendant's practice of charging per hour late key return and/or Holdover Fees violates the Lease, the FRLTA, and/or the FCCPA are common issues that will be decided for all other consumers with similar Leases and collection letters. There is nothing peculiar about Plaintiff's situation that would make her inadequate as a Class Representative. Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation.

67. A class action is superior to other methods for the fair and efficient adjudication of this controversy because the damages suffered by each individual Class member will be relatively modest, compared to the expense and burden of individual litigation. It would be impracticable for each Class member to seek redress individually for the wrongful conduct alleged herein because the cost of such individual litigation would be cost prohibitive as individual statutory damages for each violation are capped at $1,000.00 under the FCCPA, at the discretion of the Court. It would be difficult, if not impossible, to obtain counsel to represent Plaintiff on an individual basis for such small claims.

18

68.    More importantly, the vast majority of the Breach of Contract Class, Florida Sub-class, and Collections Sub-class members are not aware that the Defendant's policies violate the Lease, FRLTA, and FCCPA and a class action is the only viable means of adjudicating their rights.  There will be no difficulty in the management of this litigation as a class action as the legal issues affect a standardized pattern of conduct by Defendant and class actions are commonly used in such circumstances and Defendant has the records necessary to determine class membership and damages.

### COUNT I
**Breach of Contract**
**On behalf of the Breach of Contract Class**

69.    Plaintiff and the Breach of Contract Class repeat and re-allege paragraphs 1 through 68 as if fully set forth herein.

70.    Plaintiff and the Breach of Contract Class entered into substantially similar lease agreements, an example of which is reflected in Plaintiff's Lease. Ex. 1, Lease.

71.    The Lease is a template provided by the National Apartment Association ("NAA"), which can be amended by a party seeking to use the template.  Defendant amended the standard language of the NAA lease to state that the last day of the Lease term ended at 12:00 p.m. noon.  *Id.*  Despite this language, however, Defendant routinely charged Plaintiff and the class for the entirety of the last day of the Lease term.

72.     Defendant's Form Lease provisions at issue in this case are substantially similar across the United States in that they: (1) end at noon; (2) charge for the full final day of the lease term; (3) fail to include or reference a per hour Holdover Fee; and (4) include a holdover provision that permits a holdover charge that is a fraction of the $100 per hour Holdover Fee charged to Plaintiff and the Breach of Contract class.

73.     Defendant's standard form lease does not state that it may charge a per hour Holdover Fee at all.

74.     Even if the Lease did state that Defendant was entitled to charge a per hour Holdover Fee for late return of the key and/or holdover, such a provision would be an unenforceable penalty as the per hour fee bears no relation to damage suffered by Defendant.

75.     Defendant breached the Lease when it: (1) attempted to modify the terms of the Lease with a flyer, (2) charged a per hour Holdover Fee not included in the Lease, (3) charged a per hour Holdover Fee which constitutes an unenforceable penalty provision, and (4) charged a Holdover Fee that contradicts the Holdover provision in the Lease.

76.     As a result of Defendant's breach, Plaintiff and the Class Members suffered actual damages including security deposit amount withheld or amounts paid for Holdover Fees.

77.    Because of Defendant's breach, Plaintiff and the Class Members have retained the undersigned counsel to represent them in this action and are required to pay them a reasonable fee.

**COUNT II**
**VIOLATION OF THE FLORIDA RESIDENTIAL LANDLORD AND TENANT ACT, FLA. STAT. § 83.40** *et seq.* **("FRLTA")**
**On behalf of the Florida Sub-class**

78.    Plaintiff and the Holdover Sub-class repeat and re-allege paragraphs 1 through 68 as if fully set forth herein.

79.    The FRLTA is a comprehensive statute that governs relations between landlords and tenants in the state of Florida. Fla. Stat. § 83.40 *et seq.*

80.    The FRLTA does not limit itself to the owner of a building when referring to the "landlord," instead the FRLTA defines the landlord broadly as "the owner or lessor of a dwelling unit." Fla. Stat. § 83.44(9).

81.    For purposes of the FRLTA, Defendant Cardinal Group is the landlord of all properties that it manages in the state of Florida. Defendant lists the units for rent, fields calls and emails to rent the unit, shows the unit, executes leases, administers move in, collects rent and deposits, administers tenancy, administers move out, assesses move out fees, administers security deposit deductions and returns, and administers collections.

82.    The FRLTA forbids unconscionable rental provisions:

> (1) If the court as a matter of law finds a rental agreement or any provision of a rental agreement to have been unconscionable at the time it was made, the court may refuse to enforce the rental agreement, enforce the

21

> remainder of the rental agreement without the
> unconscionable provision, or so limit the application of any
> unconscionable provision as to avoid any unconscionable
> result.

Fla. Stat. § 83.45(1).

83.    The FRLTA also proscribes the maximum amount that may be charged

in the event of a holdover tenant:

> If the tenant holds over and continues in possession of the
> dwelling unit or any part thereof after the expiration of the
> rental agreement without the permission of the landlord, the
> landlord may recover possession of the dwelling unit in the
> manner provided for in s. 83.59. The landlord may also
> recover double the amount of rent due on the dwelling unit,
> or any part thereof, for the period during which the tenant
> refuses to surrender possession.

Fla. Stat. § 83.58.

84.    Defendant's standard form Lease used in the state of Florida contains a

provision that is unconscionable.  Specifically, the Lease states that it expires at noon

on the final day of the lease, July 31, 2024.  Ex. 1, Lease, p. 1.  The noon end time of

the lease is unconscionable because the rent has not been prorated for the final day.

Accordingly, tenants are forced to pay for the full final day of the lease, but are only

receiving access to the unit for 12 hours of the final day and then are charged excessive

Holdover Fees after noon.

85.    In compliance with the FRLTA, the Lease states that the Defendant will

only be permitted to charge up to double rent for a holdover tenancy, underlined charged daily.

*Id.* (emphasis supplied).

86. Plaintiff's Lease states that her monthly rent is $758 or $25.26 per day on a 30-day month. According to the Lease and the FRLTA, if Plaintiff was holdover for an entire month, the maximum that Defendant could charge is $1,516. For a single day the maximum would be $50.53.

87. Defendant alleges that Plaintiff overstayed her Lease by five hours. Rather than charge Plaintiff $2.10 per hour for a total of $10.50 (according to its Lease), Defendant charged Plaintiff $100 per hour for a total of $500.

88. Additionally, Plaintiff was charged for and paid rent for the entire last day of the Lease and did not holdover at all, as a result.

89. Defendant violated the FRLTA when it (1) imposed a per hour fee for late key return and/or holdover fee that is unconscionable because the tenant was charged and paid for the entire last day and therefore did not holdover at all; and (2) imposed a $100 per hour Holdover Fee that exceeds the amount allowed under the Lease and the FRLTA, even if deemed to have held over despite paying for the entire day.

90. Therefore, Defendant violated Fla. Stat. § 83.45(1) and Fla. Stat. § 83.58 when it sought to and did impose a $100 per hour Holdover Fee.

91. Plaintiff and the Florida Sub-class suffered damages equal to the amount of any security deposits withheld and any amounts collected above the deposit, plus interest. In the alternative, Plaintiff and the Florida Sub-class suffered damages in the amount charged above 2x the pro-rated monthly rent.

92.    In accordance with Fla. Stat. § 83.48, Plaintiff and the Class are entitled to attorney's fees and costs.

**COUNT III**
**VIOLATION OF THE FLORIDA CONSUMER**
**COLLECTION PRACTICES ACT, FLA. STAT. § 559.55** *et seq.* **("FCCPA")**
**On Behalf of the Collections Sub-class**

93.    Plaintiff and the Collections Sub-class repeat and re-allege each and every factual allegation contained in paragraphs 1 through 68 above as if fully set forth herein.

94.    In recognition of abusive, deceptive, and unfair practices by those that collect debts, the Florida legislature passed Fla. Stat. §§ 559.55 – 559.785, known as the Florida Consumer Collections Practices Act ("FCCPA").

95.    The FCCPA defines "debt" or "consumer debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." Fla. Stat. § 559.55.

96.    For purposes of the FCCPA, monies allegedly due, over and above a security deposit, for alleged late key and/or Holdover Fees related to tenancy are considered a consumer debt.

97.    "Debt collector" means any person who uses any instrumentality of commerce within this state, whether initiated from within or outside this state, in any business the principal purpose of which is the collection of debts, or who regularly

collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

98.    For purposes of the FCCPA, when Defendant engages in the practice of collecting debts in connection with residential leases, including alleged damages related to the properties that it manages, its collection practices are governed by the FCCPA.

99.    At all times material herein, Plaintiff and the Collections Sub-class members were "debtors" or "consumers" as defined by Fla. Stat. § 559.55(8).

100.    At all times material herein, the amounts allegedly due to be paid to Defendant in connection with its Leases, and as set forth on the Final Account Statement or in collection correspondence as allegedly due after move out, were "debts" or "consumer debts" as defined by Fla. Stat. § 559.55(6).

101.    At all times material herein, Defendant was a "person" as referred to under Fla. Stat. § 559.01.

102.    Among the FCCPA's enumerated prohibitions, Fla. Stat. § 559.72(9) states that "no person shall"… "[c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist."

103.    As described in Count II above, the FRLTA makes it unlawful for the landlord or its agent to impose a lease provision that is unconscionable and limits the amount that may be charged to a holdover tenant to double the monthly rent. Fla. Stat. §§ 83.45(1); 83.58.

104.    Accordingly, Defendant violated the FRLTA when it sought to impose a $100 per hour Holdover Fee on Plaintiff and the Collections Sub-class, when the tenants were charged and paid for the entire day and the Holdover Fee was not a term of the Lease.

105.    Defendant's practice of deducting the $100 per hour Holdover Fee from tenant security deposits in violation of the FRLTA violates the FCCPA, Fla. Stat. §559.72(9), as it asserts a legal right that Cardinal Group did not have.  The unlawful taking of these funds to pay Holdover Fees that violate the FRLTA and the FCCPA are actual monetary damages and concrete harm for Article III standing purposes.

106.    As a result, Defendant's Final Account Ledger and the emails accompanying it assert a legal right that Defendant did not have because at the time the Collection Communication was sent, the amounts sought were in violation of the FRLTA and the Lease.

107.    Defendant had full knowledge of the FRLTA as a property management company that handles security deposits at thousands of units in Florida and cannot claim ignorance of the law.  It had no right under the law to impose its claims on Security Deposits and unlawfully took those funds from Plaintiff and the Class anyway.

108.    Further, Defendant had no legal right to collect any additional amounts from Plaintiff or Class members for Holdover Fees above the deposits it retained.  Thus, all amounts collected by Defendant over and above the security deposit amounts already withheld were also collected in violation of the FCCPA.

109.    The FCCPA is a strict liability statute and therefore, Defendant should be held liable from its policy of assessing illegal and unconscionable $100 per hour Holdover Fees that violate the FRLTA and the Lease itself, and where the tenants paid for the entire last day of the lease.   .

110.    As a direct and proximate result of Defendant's FCCPA violation, Plaintiff and the FCCPA Class suffered actual damages in the form of: (1) security deposits withheld by Defendant for Holdover Fees; (2) amounts paid to Defendant after sending a Final Account Statement in the form of Exhibit 2 including Holdover Fees; (3) negative credit reporting, harassment, fear, embarrassment, and stress regarding amounts allegedly to and including Holdover Fees; and (4) and statutory interest on such amounts.

111.    Plaintiff and the Class are also entitled to statutory damages of $1,000 per class member and attorney's fees and costs pursuant to Fla. Stat. § 559.77(2).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter an Order:

a.    Certifying this action as a class action as provided by Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as Class Representative, and appointing the undersigned as Class Counsel;

b.    Adjudging that Defendant violated the FRLTA, the FCCPA, and breached the Lease and awarding Plaintiff and Class members actual damages;

c.    Awarding Statutory damages to Plaintiff and Class Members under the FCCPA;

d.      Awarding Plaintiff her costs and attorneys' fees action pursuant to the

FCCPA and FRLTA; and

e.      Awarding such other and further relief as the Court may deem just and

proper.

Dated: September 22, 2025

**HANDLEY FARAH & ANDERSON PLLC**

/s/ William H. Anderson
William H. Anderson, CO Bar: 45960
(*admitted to USDC Colorado*)
1454 Spruce Street, Suite 301
Boulder, CO 80302
Telephone:  (303) 800-9109
Facsimile:  (844) 300-1952
*wanderson@hfajustice.com*

Simon Wiener, NY Bar No. 5776935
(*admitted to USDC Colorado*)
33 Irving Place
New York, NY 10003
Telephone: (202) 921-4567
Facsimile:  (844) 300-1952
*swiener@hfajustice.com*

**VARNELL & WARWICK, P.A.**
Jeffrey L. Newsome, II; FBN: 1018667
(*admitted to USDC Colorado*)
Brian W. Warwick; FBN:  0605573
(*admitted to USDC Colorado*)
Janet R. Varnell; FBN:  0071072
(*admitted to USDC Colorado*)
400 N Ashley Drive, Suite 1900
Tampa, FL  33602
Telephone:  (352) 753-8600
Facsimile:  (352) 504-3301
*bwarwick@vandwlaw.com*
*jvarnell@vandwlaw.com*
*jnewsome@vandwlaw.com*

**SERAPH LEGAL, P.A.**
Thomas M. Bonan Esq.
(*admission application pending*)
Florida Bar No.: 118103
2124 W. Kennedy Blvd., Suite A
Tampa, Florida 33606
Tel: 813-567-1230 (Ext: 302)
Fax: 855-500-0705
*TBonan@SeraphLegal.com*

***Attorneys for Plaintiff and the proposed Class***